UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL T. MCLAUGHLIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES G. COX, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:14-cv-00178-APG-PAL<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 59, 68, 72, 75, 80, 84, 85, 87) |

　　　　Plaintiff Michael T. McLaughlin is an inmate at Southern Desert Correctional Center ("SDCC"). McLaughlin asserts two claims. First, he alleges defendants James Cox, Brian Williams, Cory Newton, Gustavo Sanchez, and Karly McCormack violated his First Amendment rights when they moved him to more restrictive housing in retaliation for him seeking to re-open a case in state court and for filing a notice of appeal in another case in federal court. Second, he alleges defendant doctors Romeo Aranas, Francisco Sanchez, and Cheryl Dressler were deliberately indifferent to his back pain.

　　　　The moving defendants[1] seek summary judgment on both claims. First, they argue no genuine dispute remains that McLaughlin's transfer to a segregation unit was not in retaliation for filing court documents. Rather, they assert he was transferred because he was being investigated for sending a razor blade to then-Nevada Attorney General Catherine Cortez-Masto. Alternatively, they assert they are entitled to qualified immunity on this claim. Second, they argue no genuine dispute remains that the doctor defendants were not deliberately indifferent to McLaughlin's back pain because they treated him for that on numerous occasions. They also contend this claim is barred by issue and claim preclusion. Finally, the doctor defendants assert they are entitled to qualified immunity.

/ / / /

---

[1] All defendants except Dressler.

## I. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. First Amendment Retaliation

The moving defendants argue that they are entitled to judgment on this claim because there is no genuine dispute that McLaughlin was moved to administrative segregation because he sent a letter containing a razor blade to the Nevada Attorney General. McLaughlin responds that he did not send a razor blade and his legal mail was inspected before being sealed so it could not have contained a razor blade. He point out that the defendants do not offer a photograph of the alleged razor blade. McLaughlin also argues the affidavits the defendants offer in support of their motion are not worthy of belief because they were prepared by Nevada Department of Corrections ("NDOC") employees.

In early September 2013, McLaughlin was an inmate at SDCC. ECF No. 59-6 at 8. He sent a letter to then-Nevada Attorney General Catherine Cortez-Masto that included his notice of appeal in a federal civil lawsuit. ECF No. 59-3. On September 11, 2013, defendant Cox received information that a letter containing a razor blade was mailed to Cortez-Masto. ECF No. 59-2 at 2.

On September 12, Cortez-Masto received a letter that contained a razor blade. *Id.*; *see also* ECF Nos. 59-3; 59-4 at 2-3. The letter bore a return address for McLaughlin at SDCC. ECF Nos. 59-2 at 2; 59-3 at 4. That same day, Cox directed that McLaughlin be reclassified to administrative segregation at High Desert State Prison ("HDSP") due to a pending Inspector General investigation of the razor blade. ECF Nos. 59-6 at 9; 59-7 at 2-3. The next day, McLaughlin's motion to re-open a case against NDOC officials was filed in Nevada state court. ECF No. 59-19.

The razor blade incident was investigated by the Federal Bureau of Investigation. ECF Nos. 59-4; 59-5 at 2. FBI Special Agent Henry Schlumpf visited the Inspector General's offices to examine the envelope and its contents, which included a razor blade. ECF No. 59-4 at 2-3. The criminal investigation against McLaughlin was later closed without criminal charges being brought against him. ECF No. 59-1 at 3. In February 2014, the Inspector General's Office informed HDSP officials that McLaughlin could be removed from administrative segregation because the FBI had closed its criminal investigation. ECF Nos. 59-1 at 3; 59-6 at 9. McLaughlin was then reclassified to the general population at SDCC. ECF No. 59-6 at 9.

In a declaration attached to his opposition, McLaughlin admits that he sent the letter to Cortez-Masto but denies he put a razor blade in the envelope. ECF No. 69 at 15. McLaughlin states that because prison regulations require any outgoing mail to the Attorney General be inspected, he could not have inserted a razor blade without being caught. *Id.* at 12, 15. He avers that his letter was inspected by the law library supervisor. *Id.* at 15. Prison regulations require that outgoing mail sent to the Attorney General "will be inspected before the envelope is sealed, then initialed by the staff." *Id.* at 12. McLaughlin has submitted declarations from other inmates stating that they have observed the law library supervisor inspect letters addressed to the Nevada Attorney General. *Id.* at 18-20.

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A First Amendment retaliation claim has five elements. First, the plaintiff must show he engaged in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir.

2012). Second, the plaintiff must show the defendant took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation," and the "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough. . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

Finally, the plaintiff must show that the defendant's retaliatory act "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted). To establish this element, the plaintiff must show the defendant not only acted with a retaliatory motive, but also that the defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Id.* (quotation omitted).

McLaughlin's claim fails on the final element. The defendants have presented evidence, supported by affidavits signed under oath, that an envelope containing a razor blade was received by Cortez-Masto's office, that the envelope bore a return address from McLaughlin, and that the FBI initiated an investigation into the incident. Once that investigation was completed and no charges were filed, McLaughlin was moved back to the SDCC general population. McLaughlin contends the defendants failed to prove the razor blade existed because they did not include a picture of it. However, James Jones, a criminal investigator for NDOC's Inspector General's Office, states under oath that he saw a razor blade. ECF No. 59-4 at 2-3. The defendants thus have presented evidence the razor blade existed.

Moreover, regardless of whether a razor blade was in the envelope, and (if there was one) regardless of whether McLaughlin put it there, the defendants were justified in transferring McLaughlin during the investigation unless they either knew that no razor blade existed or knew McLaughlin had nothing to do with placing it in the envelope. However, McLaughlin has presented no evidence that the particular defendants he sued had that knowledge. He relies on his affidavit stating that he did not put a razor blade in the envelope and that his mail was inspected. But inspections do not always uncover all contraband. The fact that an inspection procedure is in place does not demonstrate that these defendants either knew there was no razor blade or knew McLaughlin did not put it in the envelope. Consequently, there is no evidence disputing that the decision to transfer McLaughlin during the investigation served legitimate institutional goals and was not arbitrary, capricious, or unnecessary to maintenance of order in the institution.

McLaughlin also argues I should view the defendants' affidavits with suspicion because the affiants work for NDOC. I do not make credibility determinations at summary judgment. Instead, I ask only whether, viewing the facts in the light most favorable to McLaughlin, genuine disputes remain for trial. As explained above, no genuine dispute remains.

Thus, even assuming the defendants acted with some retaliatory motive based on the temporal proximity between the notice of appeal[2] and the transfer, McLaughlin has not presented evidence raising a genuine dispute that the defendants' decision to transfer him was arbitrary and capricious or unnecessary to the maintenance of order. I therefore grant the defendants' summary judgment motion on this claim.

**B. Deliberate Indifference**

"The Eighth Amendment guarantees adequate medical care for inmates." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). To establish an Eighth Amendment violation based on a failure to provide adequate medical care, the plaintiff must show the official was deliberately

---

[2] There is no correlation between McLaughlin's filing in state court and his transfer to administrative segregation. That document was not filed in state court until after McLaughlin was transferred. ECF No. 59-19. There is no evidence the defendants knew of that filing prior to McLaughlin being transferred. Accordingly, it could not form the basis of a retaliatory transfer.

indifferent to a serious medical need. *Lemire v. Cal. Dep't of Corr. & Rehab*, 726 F.3d 1062, 1081 (9th Cir. 2013). A serious medical need means that failure to treat the prisoner's condition "could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* An official is deliberately indifferent if the official engaged in a purposeful act or failed to respond to the prisoner's pain or medical need, and the indifference caused harm to the prisoner. *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison [officials] provide medical care." *Id.* (quotation omitted).

The medical records and declarations from treating personnel attached to the defendants' motion show that McLaughlin was seen repeatedly for his back pain, given x-rays, prescribed medication, and advised about stretching to strengthen his back and alleviate pain. *See* ECF Nos. 59-10; 59-13; 59-15; 61-1 at 4-5, 8-9, 11, 14-16, 19-20, 25, 30, 32-34. The doctors at SDCC thus have been treating McLaughlin's back pain. Further, the doctors and nurse practitioner each opine that McLaughlin has received medically appropriate treatment. *See* ECF Nos. 59-10; 59-13; 59-15. McLaughlin has not presented any contrary evidence.

McLaughlin has been seen by multiple doctors who have reached similar conclusions regarding his course of treatment. His disagreement "as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). McLaughlin has not shown that "the course of treatment the doctors chose was medically unacceptable under the circumstances," or that the doctors "chose this course in conscious disregard of an excessive risk to [his] health." *Id.* I therefore grant summary judgment in favor of defendants Romeo Aranas and Francisco Sanchez.[3]

////

---

[3] The defendants also argue that if nurse Dulce Kabatay was meant to be a defendant, she is entitled to summary judgment. Kabatay is not listed in the amended complaint's caption nor was she identified as a defendant in the screening order. *See* ECF Nos. 8, 9. However, even if McLaughlin intended to state a claim against her, the same reasoning would apply to her.

## II. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 59) is GRANTED**. The clerk of court shall enter judgment in favor of defendants James Cox, Brian Williams, Cory Newton, Gustavo Sanchez, Karly McCormack, Romeo Aranas, and Francisco Sanchez and against plaintiff Michael McLaughlin.

IT IS FURTHER ORDERED that plaintiff Michael McLaughlin's motion for summary judgment **(ECF No. 72) is DENIED**.

IT IS FURTHER ORDERED that plaintiff Michael McLaughlin's motion for appointment of counsel **(ECF No. 68)**, motion to substitute party **(ECF No. 75)**, motion to compel **(ECF No. 80)**, and motion for issuance of subpoena **(ECF No. 85) are DENIED as moot**.

IT IS FURTHER ORDERED that the defendants' motions to strike **(ECF Nos. 84, 87) are DENIED as moot**.

DATED this 9th day of September, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE